[No. 7255. Decided October 6, 1908.]

## J. H. YOUNG, *Appellant*, v. EDWARD DAVIS *et al.*, *Respondents.*[1]

MORTGAGES—FORECLOSURE—JUDGMENT — LIEN — VENDOR AND PUR-
CHASER—CONSTRUCTIVE NOTICE OF SALE. A judgment of the superior
court being a lien upon real property of the judgment debtor in the
county, from the date of its entry under Laws 1893, p. 65, a judgment
of foreclosure of a mortgage is constructive notice of the sale and
proceedings thereunder, without the filing of any notice of *lis pen-
dens* or certificate of sale in the recorder's office; and subsequent
purchasers from the mortgagor take an inferior title regardless of
the fact of their taking possession and making improvements in
good faith.

Appeal from a judgment of the superior court for Stevens
county, Carey, J., entered October 16, 1907, upon findings
in favor of the defendants, after a trial before the court
without a jury, in an action to quiet title. Affirmed.

*S. Douglas*, for appellant.

*W. H. Jackson*, for respondents.

FULLERTON, J.—The appellant, who was plaintiff below,
began this action to quiet title in himself to certain real
property situated in Colville, Stevens county, Washington.
The respondents answered claiming title in themselves, which
title they also asked to be quieted. On the issues made, a
trial was had before the court, which resulted in findings and
a judgment in favor of the respondents. This appeal was
taken therefrom.

The facts shown by the record, material to the inquiry
here, are in brief these: On March 31, 1890, one W. H.
Kearney, a bachelor, was the owner of the land in dispute,
and on that day mortgaged the same to the Stevens County
Bank, to secure the payment of a promissory note of $500
and interest, due ninety days after date. This mortgage was

[1]Reported in 97 Pac. 506.

duly recorded in the auditor's office of Stevens county. There-
after the bank became insolvent, and on September 12, 1902,
made a general deed of assignment of all its property, in-
cluding the mortgage and note above mentioned, to one John
B. Slater. Slater entered upon the duties of his trust, and
shortly thereafter began proceedings to foreclose the mort-
gage. Thereafter, and while the suit was pending, Slater
resigned his trust, and one William J. Galbraith was ap-
pointed receiver in his stead. Galbraith continued the fore-
closure proceedings, obtaining a decree and order of sale in
the regular way on September 12, 1894, under which the
property was sold to one Frank Fish on May 22, 1896. At
the time of the sale, a certificate of sale in due form was made
out by the officer conducting the sale, and delivered to Fish;
also, due return of the sale was made and filed in court, and
the sale confirmed June 5, 1896. No notice of the pendency
of the action was filed with the auditor, either by Slater or
Galbraith, and Fish never recorded his certificate of sale. On
July 15, 1903, one Ehorn procured a quitclaim deed to the
land from W. H. Kearney, the original mortgagor, and on
August 24, 1903, conveyed the property by deed to one H.
M. Bollinger, who in turn conveyed to the appellant by deed
dated October 19, 1906.

Frank Fish, the purchaser under the foreclosure sale, died
intestate, in the state of Nebraska, sometime in the fall of
1896, without having parted with the interest he acquired by
his purchase at the sale. He left surviving him a widow and
one son as his sole heirs at law, who inherited his interests in
the property. These interests were conveyed to the respond-
ents by the son and widow, by deeds dated, respectively, Feb-
ruary 26, 1907, and March 20, 1907. Thereafter on Sep-
tember 13, 1907, the sheriff of Stevens county executed and
delivered to the respondents, as successors in interest of
Frank Fish, a sheriff's deed to the premises, pursuant to the
foreclosure sale.

In addition to the foregoing, the evidence tended to show that Bollinger, after his purchase from Ehorn, entered into possession of the property, and remained therein for some three years, building a house and otherwise improving the premises. The land, however, was vacant and unoccupied at the time of the commencement of this action. There was evidence, also, tending to show that Ehorn had no actual knowledge of the foreclosure sale at the time he purchased the land from Kearney.

The principal question presented by the record is, whether the purchaser from Kearney was bound to notice the judgment of foreclosure and the subsequent sale thereunder of the mortgaged property to the purchaser Fish. The appellant contends that he was not, since nothing was of record in the auditor's office that put him upon his inquiry. He concedes that, had a notice of the pendency of the action been filed in that office, or had Fish recorded his certificate of sale therein, or had a sheriff's deed been executed pursuant to the foreclosure sale and recorded in the auditor's office prior to his purchase, he would be bound by constructive notice; but that he was not obligated to take notice of the proceedings recorded in the county clerk's office, even though they affect real property situated in the county in which the office is situated.

But the appellant mistakes the statute. Since the act of March 3, 1893 (Laws 1893, p. 65), a judgment of the superior court has been a lien upon the real property of the judgment debtor in the county where the judgment is rendered from the date of its entry, and this being so, it is of course constructive notice to any one purchasing such real property. It must follow, also, that since the judgment itself is constructive notice, all of the subsequent proceedings had thereunder are, likewise, constructive notice to subsequent purchasers of real property affected by such proceedings. So in this case, since the purchaser from the mort-

gagor Kearney after the foreclosure and sale was bound to take notice of the decree of foreclosure and the subsequent sale of the mortgaged land thereunder, he took with notice of such proceedings and acquired only such interests as Kearney had therein. But Kearney's interests were effectually cut off by the foreclosure and sale. By his purchase at the foreclosure sale, the purchaser Fish acquired the full equitable title in the property, which could only be defeated by a redemption from the sale within the year permitted by statute, by the mortgagor or his successor in interest. The title became absolute in Fish on the failure to redeem within the time, and descended to his heirs on his death, and was acquired by the respondents by their deeds from such heirs and became perfected in the respondents by the deed from the sheriff.

The fact that a predecessor in interest of the appellant entered into possession of the land for a time, and made improvements thereon, does not affect the respondents title. Doubtless such acts tended to show good faith on the part of the purchaser, but the good faith of either party is not in question; it is a question of the superior title, and we hold the superior title to be with the respondents.

*Stang v. Redden,* 28 Fed. 11, is a case in point on all of the questions presented here. It was there held under a statute similar to our own that the judicial confirmation of a foreclosure sale vests in the purchasers the full equitable title to the mortgaged premises, whether any deed is executed and delivered to the purchaser or not, and that the foreclosure record in the district court was constructive notice to all persons claiming under the mortgagor of the outstanding equities vested in the purchaser at such foreclosure sale. See, also, on the question of notice, *Fleckenstein v. Baxter,* 114 Mo. 493, 21 S. W. 852.

The judgment appealed from is affirmed.

HADLEY, C. J., ROOT, MOUNT, CROW, and DUNBAR, JJ., concur.